**SO ORDERED.**

**SIGNED August 19, 2011.**



_____
ROBERT SUMMERHAYS
UNITED STATES BANKRUPTCY JUDGE
_____

```
              UNITED STATES BANKRUPTCY COURT
               WESTERN DISTRICT OF LOUISIANA

IN RE:

BEVERLY KEMP and
MARY ANN KEMP,                            CASE NO. 03-52422

     Debtors                              Chapter 13
----------------------------------------------------------------
BEVERLY KEMP and
MARY ANN KEMP,

     Plaintiffs

VERSUS                                    ADVERSARY NO. 11-5002

SEGUE DISTRIBUTION, INC.
CHUBB CUSTOM INSURANCE COMPANY
HARTFORD FIRE INSURANCE COMPANY
CLARENDON AMERICA WESTERN WORLD
INSURANCE COMPANY HOLLIDAY
TRUCKING, INC., LARRY G. SAVOIE,

     Defendants
----------------------------------------------------------------
                       MEMORANDUM RULING
----------------------------------------------------------------
```

The present adversary proceeding addresses whether judicial estoppel bars a personal injury action brought by the debtors,

Beverly and Mary Ann Kemp (hereinafter referred to as "Debtors"). Debtors commenced this proceeding and filed a motion for summary judgment seeking a declaration that they are not judicially estopped from pursuing their personal injury claims. The defendants, Segue Distribution, Inc., Chubb Custom Insurance Co., Hartford Fire Insurance Co., Holliday Trucking, Inc., and Larry G. Savoie (collectively, "Defendants") filed cross-motions for summary judgment asserting that judicial estoppel bars Debtors' personal injury claims as a matter of law. The court took the motions under advisement following oral argument. After considering the parties' arguments, pleadings, and the relevant authorities, the court rules as follows.

## BACKGROUND

Beverly and Mary Ann Kemp filed for relief under Chapter 13 of the Bankruptcy Code on October 15, 2003. The first order confirming Debtors' Chapter 13 plan was entered January 28, 2004. The bar date for timely proofs of claim was March 9, 2004. In July 2007, Beverly Kemp was injured in a traffic accident, and Debtors hired a personal injury lawyer to represent them in connection with the accident. On February 8, 2008, Keith Rodriguez, the standing Chapter 13 trustee (the "Trustee"), filed a motion to dismiss the case on the grounds that Debtors had failed to turn over copies of their tax returns and did not remit tax refunds pledged by their

-2-

confirmed plan. (Exhibit 1 to Debtors' Motion for Summary Judgment ("Debtors' MSJ")). Debtors hired new bankruptcy counsel and filed a response to the Trustee's motion disclosing the July 2007 accident. Debtors' response stated that they would obtain an advance on their personal injury claims (which had not yet been filed) from their personal injury lawyer in order to pay out the remaining allowed claims in the case. Specifically, paragraph 2 of Debtors' response stated:

> Debtors have made all scheduled plan payments. A balance of approximately $6,500.00 will be needed to pay all claims and costs associated with the defense of this motion. Debtors are seeking assistance of Mr. Kemp's personal injury attorney, (<u>accident occurred on July 30, 2007</u>) in liquidating this amount and request a delay in which to do so. (Emphasis added).

(Exhibit 2 to Debtors' MSJ). An affidavit submitted by Beverly Kemp further states that he advised his new counsel of the accident and discussed his damages claim with the Trustee. (Docket Entry No. 54). Although Debtors do not submit any transcripts of court hearings, Mr. Kemp states in his affidavit that his personal injury claim was discussed during a court hearing in 2008. The Trustee also submitted an affidavit stating that he "was fully cognizant of this civil case and allowed its use in payment of all Plaintiffs' outstanding bankruptcy claims." (Exhibit 17 to Debtors' MSJ).

Debtors and the Trustee ultimately agreed to resolve the

-3-

motion to dismiss by requiring Debtors to obtain an advance on Mr. Kemp's personal injury claim sufficient to pay the remaining allowed claims in the case.  The payment was made and, on August 8, 2008, the court entered an order discharging Debtors based on the completion of their Chapter 13 plan.  On June 9, 2008, Debtors filed a personal injury action against Defendants in the 16th Judicial District Court, St. Mary Parish.  In 2010, Defendants filed pleadings in the state court action alleging that Debtors' claims are barred by judicial estoppel because they were not fully disclosed in the bankruptcy case.  On December 27, 2010, Debtors filed a motion to re-open their chapter 13 case, and that motion was granted on January 6, 2011.  Debtors then commenced the instant adversary proceeding.  Defendants and Debtors subsequently filed cross-motions for summary judgment with respect to Defendants' judicial estoppel defense.

## DISCUSSION

Judicial estoppel is an equitable doctrine developed to protect the integrity of the judicial system.  The doctrine prevents "a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." <u>New Hampshire v. Maine</u>, 532 U.S. 742 (2001) (quoting 18 Moore's Federal Practice § 134.30 (3d ed. 2000)).  The factors that a court should consider in determining whether or not the

-4-

judicial estoppel doctrine is triggered by a party's conduct include (1) whether a party's position in a subsequent proceeding is "clearly inconsistent" with its position in a prior case; (2) whether the court in the prior case accepted the party's position, thus creating "the perception that either the first or second court was misled"; and (3) whether the party asserting inconsistent positions "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Id. at 750-51; see also In re Superior Crewboats, Inc., 374 F.3d 330 (5th Cir. 2004). In the bankruptcy context, the doctrine applies to debtors who fail to disclose a cause of action in their bankruptcy schedules and subsequently pursue that cause of action in another proceeding. The purpose of the doctrine is to ensure "full and honest disclosure by debtors of all of their assets." In re Coastal Plains, Inc., 179 F. 3d 197 (5th Cir. 1999) (quoting Rosenshein v. Kleban, 918 F. Supp. 98, 104 (S.D.N.Y. 1996)).

The judicial estoppel doctrine must be viewed against the backdrop of the Bankruptcy Code's disclosure requirements and the Code provisions defining the bankruptcy estate. 11 U.S.C. § 541 provides that the "commencement of a case under Section 301, 302, or 303 of this title creates an estate" that includes "all legal or equitable interests of the debtor and property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The property

that forms the estate under section 541 includes contingent and unliquidated causes of action existing at the commencement of the case. Section 521 of the Bankruptcy Code sets forth the debtor's disclosure obligations at the commencement of the case. Specifically, section 521(a) requires the debtor to file a schedule of assets and liabilities. 11 U.S.C. § 521(a)(1)(B)(ii). That schedule must include all property that falls within the broad ambit of section 541(a), including any unliquidated causes of action existing as of the commencement of the case. In a Chapter 7 case, this schedule assists the Chapter 7 trustee in identifying property to administer for the benefit of the debtor's creditors. Failure to disclose a cause of action could deprive creditors of the benefit of any recovery from that cause of action. Judicial estoppel thus comes into play to ensure that a debtor does not unfairly benefit from an undisclosed cause of action at the expense of the debtor's creditors.

The prototypical case for the judicial estoppel doctrine in the Chapter 7 context is <u>Eastman v. Union Pacific Railroad Co.</u>, 493 F. 3d 1151 (10th Cir. 2007). In <u>Eastman</u>, an injured railroad worker filed suit against Union Pacific for injuries he received prior to filing bankruptcy. The debtor subsequently filed for relief under Chapter 7 of the Bankruptcy Code, but failed to disclose his pending lawsuit against Union Pacific in his schedules. Moreover,

-6-

the debtor failed to disclose the pending lawsuit to the Chapter 7 trustee during his creditors' meeting. As result, the debtor's personal injury claim was never administered for the benefit of his creditors. The Tenth Circuit concluded that judicial estoppel precluded the debtor's claims because those claims were not disclosed on either the debtor's schedules or to the trustee. Id. at 1158. The court rejected the debtor's argument that the omission was inadvertent because he did not understand the Bankruptcy Code's disclosure requirements. Id. at 1157. The court observed that inadvertence or mistake prevents the application of judicial estoppel "only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." Id. (quoting In re Coastal Plains, Inc., 179 F.3d at 210). In the end, judicial estoppel barred the debtor's claims in Eastman because his failure to schedule his claims against Union Pacific was a representation to the bankruptcy court that no such claim existed. The bankruptcy court and the trustee accepted this position and the debtor was discharged. Moreover, the debtor would reap a windfall from any settlement or recovery on his claims at the expense of his creditors. Id.

While the elements of judicial estoppel are the same in the Chapter 13 context, the differences between Chapter 7 and Chapter 13 complicate the application of judicial estoppel in a Chapter 13

-7-

case.  Specifically, the scope of the Chapter 13 estate and the corresponding disclosure obligations of the Chapter 13 debtor differ.  Under section 1306 of the Code, the Chapter 13 estate includes, in addition to the property included in the estate under section 541, "all property of the kind specified in [Section 541] that the debtor acquires **after the commencement of the case** but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title...." 11 U.S.C. § 1306(a).  The property of the chapter 13 estate also includes "earnings from services performed by the debtor after the commencement of the case...."  Id.  Accordingly, unlike the Chapter 7 estate, the Chapter 13 estate includes post-petition causes of action.  This distinction complicates the application of the Code's disclosure requirements (and, hence, the application of judicial estoppel) to causes of action that arise during the course of a Chapter 13 case.  Neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure explicitly require a debtor to report post-petition causes of action.  Rule 1007(h) provides for the disclosure of certain after-acquired property set forth in section 541(a)(5).  It does not, however, cover the property brought into the estate under section 1306, including post-petition causes of action.  Nevertheless, courts have uniformly held that a Chapter 13 debtor is obligated to disclose post-petition causes of action.  See,

-8-

e.g., In re Coastal Plains, 179 F.3d at 208 ("The duty of disclosure in a bankruptcy proceeding is a continuing one, and a debtor is required to disclose all potential causes of action."); Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1274 (11th Cir. 2010) ("The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather the debtor must amend [her] financial statements if circumstances change.") (quoting Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282 (11th Cir. 2002)); See also, Young v. Town of Greenwood, 2009 WL 1924192 (W.D. La. June 26, 2009) (Chapter 13 debtor had continuing duty to disclose post-petition cause of action). Accordingly, the weight of authority imposes a continuing obligation on Chapter 13 debtors to disclose post-petition causes of action, and a debtor's failure to disclose such causes of action may result in the application of judicial estoppel.

In the present case, Debtors' personal injury cause of action not only arose post-petition, it arose over three years after plan confirmation. Debtors contend that they are entitled to a declaration that Defendants' judicial estoppel defense does not bar their state law personal injury claims because the summary judgement record negates one or more elements of the defense as a matter of law. Specifically, according to Debtors, the summary judgment record establishes that:

- their personal injury claim was not listed in their

-9-

- section 521 schedules because the claim arose post-petition and after plan confirmation;

- approximately seven months after the July 2007 accident, Debtors disclosed the July 2007 accident (and any potential claims arising from that accident) in a response to the Trustee's motion to dismiss;

- Debtors offered to obtain an advance on these claims from their personal injury attorney sufficient to complete their plan payments and pay the remaining allowed claims;

- the Trustee was aware of Debtors' claims and agreed to Debtors' proposal to pay out their case with this advance;

- Debtors' counsel and the Trustee disclosed this proposal to the court during a hearing on the Trustee's motion to dismiss, and further disclosed that the funds to pay out the case were an advance on Debtors' personal injury action; and

- Debtor paid out the case with the advance and, as a result, all of the allowed claims filed in the case were paid.

Debtors contend that these facts negate at least two of the essential elements of judicial estoppel. First, by disclosing their claim to the Trustee and the court and allowing proceeds from the claim to be administered by the Trustee, Debtors' never took an "inconsistent position" with respect to their claims. Second, by using proceeds from their claim to pay out their case and pay all remaining allowed claims, Defendants cannot establish that Debtors' "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Defendants counter that

-10-

Debtors' disclosures were insufficient because they did not fully disclose the details of their claims to creditors.

Before addressing the parties' arguments on the merits, the court must first address the threshold question of subject matter jurisdiction. The parties have not addressed subject matter jurisdiction in the instant motions for summary judgment. Defendants initially challenged jurisdiction in a motion to dismiss, but subsequently withdrew the motion. Nevertheless, a federal court is obligated to examine its subject matter jurisdiction, *sua sponte* if necessary. Bender v. Williamsport Area Sch. Dist, 475 U.S. 534, 541 (1986). Subject matter jurisdiction cannot be waived, and can be raised at any point in the proceeding. Coury v. Prot, 85 F.3d 244, 248 (5th Cir. 1996). Accordingly, the court is obligated to consider jurisdiction where the parties' arguments and the record raise jurisdictional questions regardless of whether any party has questioned jurisdiction. Like federal subject matter jurisdiction generally, the bankruptcy jurisdiction "is grounded in, and limited by, statute." Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995); In re Wilborn, 609 F.3d 748 (5th Cir. 2010). Federal district courts "have original jurisdiction but not exclusive jurisdiction of all civil proceedings arising under title 11 , or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). 28 U.S.C. Section 157(a) then permits a

-11-

district court to refer "any and all proceedings arising under title 11 or arising in or related to a case under title 11" to the bankruptcy judges within the district. There are thus three types of bankruptcy jurisdiction: "arising under," "arising in," and "related to" jurisdiction. See Stern v. Marshall, ___ U.S. ___, 2011 WL 2472792 at *9 (June 23, 2011). "Arising under" jurisdiction encompasses claims created by Title 11, such as an avoidance claim under 11 U.S.C. § 544(b). See, e.g., Carlton v. BAWW, Inc., 751 F.2d 781 (5th Cir. 1985). "Arising in" jurisdiction pertains to matters that could only arise in a case under Title 11. Wilborn, 609 F.3d at 752. "Related to" jurisdiction exists when "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." In re Wood, 825 F.2d 90, 93 (5th Cir. 1987) (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)).

Debtors' request for declaratory relief does not fall within the court's "arising under" or "arising in" jurisdiction. Although compliance with federal bankruptcy disclosure requirements is an element of judicial estoppel, the doctrine does not "arise" under the Bankruptcy Code. The doctrine is not created by the Bankruptcy Code, but is a judicially-created doctrine that is not unique to bankruptcy. Nor does this proceeding fall within the court's "arising in" jurisdiction given that the doctrine may exist and be

-12-

invoked outside the context of a bankruptcy case. Indeed, the doctrine is typically invoked in a non-bankruptcy forum as a defense to the debtor's underlying claim. See, e.g., Robinson, 595 F.3d at 1274 (judicial estoppel invoked as defense in a non-bankruptcy proceeding). Whether the court has subject matter jurisdiction over this proceeding thus turns on whether this proceeding falls within the court's "related to" jurisdiction.

The same facts established in the summary judgment record that support Debtors' position on judicial estoppel also negate the jurisdictional basis for this proceeding under the court's "arising under" jurisdiction. First, the summary judgment record establishes that Debtors completed plan payments according to their confirmed plan, the Trustee paid all timely-filed allowed claims, Debtors received a discharge, and the case was then closed. As a result, the present adversary proceeding can have no conceivable impact on creditors, the plan, or the administration of the estate. See In re Brown, 300 B.R. 871, 875-76 (Bankr. D.Md. 2003) (bankruptcy court did not have "related to" jurisdiction over debtor's adversary proceeding filed after completion of plan payments and discharge; see also In re Jones, 2007 W.L. 1345361*2 (Bankr. D.Md. May 7, 2007); In re Hart, 326 B.R. 901, (6th Cir. BAP 2005); In re Harris, 306 B.R. 357, 364 (M.D. Ala. 2004). In Harris, the court concluded that it lacked "related to"

-13-

jurisdiction over an adversary proceeding in a Chapter 13 case where the debtor had completed plan payments. According to the court:

> [I]n a chapter 13 bankruptcy case where the creditors have been paid 100% and the debtor is entitled to a discharge, there is simply nothing left to which the adversarial proceeding can be related. The creditors have received all the monies due them--any recovery the debtors may receive in state court could not possibly affect the estate, as the bankruptcy estate has long since ceased to exist.

306 B.R. at 364. Defendants counter that the estate has not been fully administered. According to Defendants, Debtors' creditors were not paid in full because some creditors did not file claims and some filed claims were disallowed. This argument fails because it misconceives the claims adjudication process under Title 11. A creditor's claim must be "allowed" for the creditor to receive a distribution under a plan. 4 Collier on Bankruptcy ¶ 501.01 (16th ed. 2009). Accordingly, the claims in the present case that were disallowed were not entitled to a distribution under Debtors' plan. Similarly, creditors who did not file proofs of claim were not entitled to a distribution. The deadline for creditors to file proofs of claim in the bankruptcy case lapsed in March 2004, and that deadline cannot be extended except under limited circumstances. Bankr. R. 9006(b)(3); Bankr. R. 3002(c); <u>In re</u>

-14-

11-05002 - #64  File 08/19/11  Enter 08/19/11 14:31:15  Main Document  Pg 14 of 17

McLarry, 273 B.R. 753, 754 (Bankr. S.D. Tex. 2002).[1]  In sum, the plan was completed and the case fully administered with all allowed claims paid.  Given the payment of all allowed claims, the determination of whether or not Debtors' personal injury claims are barred by judicial estoppel would have no impact on distributions to creditors pursuant to the Bankruptcy Code.

Furthermore, this is not a case where a debtor's failure to disclose a cause of action during the Chapter 13 case precludes the trustee from administering that claim for the benefit of creditors. See, e.g., Kane v. National Union Fire Ins. Co., 535 F.3d 380, 387 (5th Cir. 2009) ("There is a statutorily explicit difference between cases in which property is not listed in the [b]ankruptcy [s]chedules but is disclosed and administered (as in the Superior Crewboats case ...) and the instant case in which property was not disclosed and was not administered.").  Although defendants question the adequacy of disclosure in this case, the summary judgment record establishes that Debtors disclosed the claim to the Trustee, and that the Trustee administered proceeds from that claim to pay the remaining allowed claims in the case.  Courts have held that similar disclosures to a trustee satisfy a debtor's disclosure

---

[1] Here, the "bar" date for filing proofs of claim lapsed long before the accident that gave rise to Debtors' personal injury claims.  As a result, any claims filed after the bar date would be subject to disallowance upon objection regardless of Debtors' post-petition cause of action.

-15-

obligations with respect to post-petition causes of action. See, e.g., In re Ortiz, 430 B.R. 523 (Bankr. E.D. Wis. 2010) (no judicial estoppel where debtor orally disclosed post-petition cause of action to trustee); Jaeger v. Clear Wing Prod., 465 F.Supp.2d 879 (S.D. Ill 2006) (oral disclosure to trustee precluded application of judicial estoppel doctrine). The cases where courts have found disclosures to be inadequate often involve deceptive conduct by the debtor that hinders the trustee's efforts to administer the claim. See, e.g., See Eastman v. Union Pacific R.R. Co., 493 F.3d 1151, 1158-59 (10th Cir. 2007); Barger v. City of Cartersville, 348 F.3d 1289, 1296 (11th Cir. 2003).[2]

Finally, in their response to Defendants' withdrawn motion to dismiss, Debtors argue that the court has jurisdiction over this proceeding because their request for declaratory relief requires the court to construe the Order of Final Decree closing their bankruptcy case and to determine whether Debtors' personal injury claims were fully administered. A mere reference to the contents

---

[2] Defendants suggest that Superior Crewboats stands for the proposition that the disclosure of a post-petition claim can only be accomplished through an amendment to the debtor's schedules. Defendants' reliance on Superior Crewboats is misplaced. That case involved a debtor who failed to disclose a *pre-petition* cause of action. See 374 F.3d at 333. The debtor's section 521 schedules were thus incomplete when filed and should have been amended to reflect the pre-petition claim. Id. at 335. In the present case, Debtors' schedules were accurate when filed because their cause of action arose almost 4 years after their bankruptcy case was filed.

-16-

of the Final Decree is not sufficient to create jurisdiction under section 1334. The court's interpretation of the Final Decree would have no impact on creditors, the administration of the estate, or the consummation of the plan. Moreover, the language of the Final Decree "is hardly the type of language that necessitates clarification by only a bankruptcy court." <u>In re Encompass Services Corp.</u>, 337 B.R. 864, 874 (Bankr. S.D. Tex. 2006) (concluding that the court lacked "related to" jurisdiction over adversary proceeding). In sum, the court lacks subject matter jurisdiction over Debtors' adversary complaint.

## CONCLUSION

For the reasons stated herein, the court concludes that it lacks subject matter jurisdiction over Debtors' adversary complaint. The adversary complaint is therefore **DISMISSED**. In all other respects, the motions for summary judgment before the court are **DENIED**. A separate order in conformity with the foregoing reasons has this day been entered into the record of this proceeding.

###